UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

v.

DANIEL ARCHIBALD,

Defendant.

Action No. 2:15-cr-0134

**OPINION & ORDER**

**THIS MATTER** comes before the Court on Defendant's omnibus motion to dismiss, in which Defendant offers several arguments in support of dismissal or suppression and which is opposed by the Government. The Court heard oral argument on February 26, 2016 and, for the reasons set forth below, the Court denies the motion insofar as it seeks dismissal based on a failure to allege a crime and failure to charge the proper elements. The Court reserves judgment on the remaining issues pending further proceedings.

Defendant, a crewman aboard a tuna fishing vessel, is accused via a two-count indictment of knowingly conspiring, in violation of 18 USC § 371, and knowingly taking marine mammals on the high seas by means of a firearm in violation of the Marine Mammal Protection Act (MMPA), 16 USC §§ 1372(a)(1) and 1375(b), and 18 USC § 2. (Indictment, ECF No. 1.) In short, the Government alleges that Defendant "and others used firearms to shoot at pilot whales onboard the [vessel] on the high seas, resulting in the serious injury and death of a pilot whale." (Id., ¶¶ 3-8.)

Defendant's motion raises narrow issues for which there is a dearth of case law, and the instant dispute has been thoroughly and thoughtfully presented. (Brief, ECF No. 11-1, at 38-46; Opp., ECF No. 24, at 6-30; Reply, ECF No. 28, at 1-11; Transcript, ECF No. 33.) As is demonstrated by this record, the MMPA is a confined yet complex statutory scheme beset by cross-

references, exceptions, and amendments. The Court first introduces the parties' arguments, then examines the pertinent provisions of the MMPA.

Defendant moves to dismiss both counts of the Indictment for the following reasons: "1) Count One does not charge a crime recognized under the MMPA because the activity of using a firearm to deter marine mammals is lawful and permitted, and in fact, exempted under the Act; and 2) [b]oth Counts fail to charge the more stringent 'intentional killing' *mens rea* requirement contained in" 16 USC § 1387. (Brief, at 38.) In particular, Defendant argues that he is "in jeopardy of being convicted for a crime for which he was not indicted and for which no evidence was placed before the grand jury[]" because the Government construes a pertinent exception in the statute as an affirmative defense as opposed to "a separate crime with a separate element of intent." (Id., at 42-46; Reply, at 3-5.)

The Government counters that "Count One of the Indictment properly pleads an object that makes out a crime under the MMPA, in that it alleges a prohibited taking and need not negate the affirmative defense set forth in Section 1371(a)(4)(A)(i) of that statute." (Opp., at 17.) In addition, the Government emphasizes that the MMPA's criminal penalties provision, § 1375(b), contemplates only violations committed "knowingly," and concludes that "[t]he plain language, structure, purpose and legislative history of the [MMPA] all support a knowing *mens rea* for criminal violations of the statute." (Id., at 17-18, 29-30.)

The MMPA seeks to maintain the marine ecosystem by stabilizing the marine mammal population through a partial moratorium on the taking of certain species. See 16 USC § 1361, et seq.; 124 A.L.R. Fed. 593 (validity, construction, and application of the MMPA). Accordingly, and in conjunction with exceptions and regulations, the MMPA generally prohibits the "take" of a marine mammal. 16 USC § 1371(a). "Take" means "to harass, hunt, capture, or kill any marine

mammal" or attempt to do the same, and "harass" includes "any act of pursuit, torment, or annoyance which has the potential to injure" or disturb a marine mammal. 16 USC § 1362(13), (18). The Indictment rests on two subsections of the MMPA. First, the Government alleges that Defendant violated and conspired to violate § 1372(a)(1), which provides that, "except as provided" in certain other MMPA subsections, it is "unlawful for any person subject to the jurisdiction of the United States or any vessel or other conveyance subject to the jurisdiction of the United States to take any marine mammal on the high seas." (Indictment, ¶¶ 2, 8.) Second, the Government cites the MMPA's criminal penalties provision, § 1375(b), which provides that "[a]ny person who knowingly violates any provision of this subchapter or of any permit or regulation issued thereunder (except as provided in section 1387 of this title) shall, upon conviction, be fined not more than $20,000 for each such violation, or imprisoned for not more than one year, or both." (Indictment, ¶¶ 2, 8.)

Beyond these provisions, the instant dispute arises out of the MMPA's reference to intentional takes—as opposed to knowing takes—as well as its subsections that delineate permissible takes and incidental takes. First, while § 1375(b) contemplates criminal penalties for "[a]ny person who knowingly violates any provision [of §§ 1371-89,]" § 1375(a) provides a "civil penalty" for "[a]ny person who violates any provision [of §§ 1371-89.]" Similarly, while § 1375(b) refers to a "knowingly" *mens rea*, the cross-referenced § 1387 provides that, "[e]xcept as provided in section 1371(c) of [the MMPA,] the intentional lethal take of any marine mammal in the course of commercial fishing operations is prohibited." 16 USC § 1387(a)(5). As an explicit exception to this prohibition against intentional lethal takes, § 1371(c) provides that "[i]t shall not be a violation of [the MMPA] to take a marine mammal if such taking is imminently necessary in self-defense or to save the life of a person in immediate danger, and such taking is reported to the Secretary

within 48 hours." Deterrence measures also are permissible, as § 1371(a)(4)(A)(i) provides that "the provisions of [the MMPA] shall not apply to the use of measures by the owner of fishing gear or catch, or an employee or agent of such owner, to deter a marine mammal from damaging the gear or catch [. . .] so long as such measures do not result in the death or serious injury of a marine mammal." As to incidental takes, § 1371(a)(2) provides that, subject to exceptions such as those provided by § 1387, "[m]arine mammals may be taken incidentally in the course of commercial fishing operations and permits may be issued therefore[.]" Section 1387(a)(1), in turn, "govern[s] the incidental taking of marine mammals in the course of commercial fishing operations by persons using vessels of the United States or vessels which have valid fishing permits[.]" Regulations define "incidental" as, "with respect to an act, a non-intentional or accidental act that results from, but is not the purpose of, carrying out an otherwise lawful action." 50 CFR § 229.2.

Against this statutory backdrop, Defendant seeks dismissal based on the Government's purported failures to allege a crime and to charge the proper elements. A defendant may move to dismiss an indictment for failure to state an offense. Fed.R.Crim.P. 12(b)(3)(B)(v). An "indictment is sufficient when it 1) contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet, and 2) allows him to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. John–Baptiste, 747 F.3d 186, 195 (3d Cir. 2014) (citations omitted); United States v. Kemp, 500 F.3d 257, 280 (3d Cir. 2007). "No greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy." United States v. Huet, 665 F.3d 588, 595 (3d Cir. 2012) (citations and punctuation omitted). Thus, the "specificity required for an indictment to have sufficient factual orientation is not particularly onerous." John–Baptiste, 747 F.3d at 196 (citations and quotations omitted). In

evaluating a motion to dismiss, the Court must accept as true the factual allegations set forth in the indictment. United States v. Besmajian, 910 F.2d 1153, 1154 (3d Cir. 1990).

And where, as here, a motion to dismiss concerns a dispute over the proper reading of a statute, the Court must employ tenets of statutory interpretation to construe the pertinent provisions and determine whether the Indictment is defective. "The first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Ki Se Lee v. Ashcroft, 368 F.3d 218, 222 (3d Cir. 2004) (citations and quotations omitted). If the statutory language is plain, it must be enforced according to its terms. King v. Burwell, 135 S.Ct. 2480, 2489 (2015) (citing Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 251 (2010)). Because the Court must avoid construction of "isolated provisions," words must be read "in their context and with a view to their place in the overall statutory scheme." King, 135 S.Ct. at 2489 (citations and quotations omitted). Courts accordingly should interpret statutory language "as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole." Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000); Ki Se Lee, 368 F.3d at 222 (Courts "must also be cognizant of the specific context in which that language is used, and the broader context of the statute as a whole." (citations and quotations omitted)).

The parties canvass the limited authority available, with the Government principally alluding to civil administrative decisions, Opp., at 13-27, and Defendant emphasizing case law in this Circuit and elsewhere with respect to pleading requirements for elements, exceptions, and affirmative defenses, Brief, at 41-46, Reply, at 4-10. In particular, the parties dispute the import of United States v. Hayashi, 22 F.3d 859, 865 (9th Cir. 1993), wherein the Court concluded that "there was insufficient evidence to find a criminal 'taking' by 'harassment'" because firing shots into an

area away from porpoises to deter them from their unusual behavior of eating bait and hooked tuna from the defendant's fishing lines were reasonable acts of deterrence that were not criminal under the MMPA. This case is inapposite, however, not only on account of the revisions to the MMPA in the intervening years, but also insofar as it reviews a conviction for sufficiency of evidence. While the Ninth Circuit's consideration of what may constitute a take is a useful starting point, before the Court now is a factually dissimilar situation with a motion to dismiss an indictment and trial not yet on the horizon. The other cases cited with respect to the MMPA are also not on point and, in any event, none would control here. See Am. Elec. Power Co. v. Connecticut, 131 S. Ct. 2527, 2540 (2011) ("[F]ederal district judges, sitting as sole adjudicators, lack authority to render precedential decisions binding other judges, even members of the same court."); In re Grossman's Inc., 607 F.3d 114, 121 (3d Cir. 2010); Threadgill v. Armstrong World Indus., Inc., 928 F.2d 1366, 1371, n.7 (3d Cir. 1991).

In addition to the dearth of MMPA case law, neither party's statutory construction yields a satisfactory result and, upon review of the statutory scheme as currently constituted, the circumstances may be such that the Court "cannot be entirely sure what Congress had in mind." United States v. Taylor, 686 F.3d 182, 191 (3d Cir. 2012). Nonetheless, it is necessary to discern the most reasonable and harmonious construction amidst the MMPA's tangle of cross-references and exceptions. See Pennsylvania Dept. of Public Welfare v. Davenport, 495 U.S. 552, 562 (1990) (expressing "deep reluctance" to interpret statutory provisions "so as to render superfluous other provisions in the same enactment"). As set forth above and as explicitly referenced in the Indictment, §§ 1372(a)(1) and 1375(b), when read in conjunction, provide criminal penalties for knowing unlawful takes. As the Government argues at length, Defendant is thus plainly on notice that the Government alleges that he knowingly committed an unlawful take and is subject to the

criminal penalties set forth in § 1375(b). As to the apparently incongruous inclusion of a prohibition against an "intentional lethal take" in § 1387(a)(5), the Court is skeptical that Congress would install such a sweeping change to the explicit *mens rea* requirement in the aptly titled "penalties" provision, § 1375(b), without further revision or explanation. See also Opp., at 24-25. Indeed, it would be absurd to create, as Defendant suggests, a heightened *mens rea* or "a separate crime with a separate element of intent" through such implicit, indirect means and without providing a new penalty. See In re Kaiser Aluminum Corp., 456 F.3d 328, 330 (3d Cir. 2006) ("A basic principle of statutory construction is that we should avoid a statutory interpretation that leads to absurd results."); McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479, 496 (1991) (Congress is presumed to legislate with knowledge of existing statutes on same subject matter as well as the basic rules of statutory construction.); Albernaz v. United States, 450 U.S. 333, 340-42 (1981) (same, in criminal context).

The Court, being disinclined to accord such weight to an "intentional lethal take" in § 1387(a)(5) so as to nullify the "knowing" *mens rea* in the "penalties" provision, § 1375(b), accordingly seeks to "adopt a construction which recognizes each element of the statute." Ki Se Lee, 368 F.3d at 222 (citing Acceptance Ins. Co. v. Sloan, 263 F.3d 278, 283 (3d Cir. 2001)). Thus, aside from the criminalization of knowing takes, the Court reads the MMPA to permit certain deterrence measures absent serious injury, § 1371(a)(4)(A)(i); to permit incidental takes in accordance with a slew of conditions and regulations, § 1371(a)(2); and, critically, to permit intentional lethal takes, § 1387(a)(5), *only where* "imminently necessary in self-defense" or defense of others and upon proper reporting, § 1371(c). The Court does not take lightly both Defendant's concern to be duly apprised of the charges against him as well as the MMPA's amenability to widely divergent interpretations. Again, however, it is prudent not to deviate from

the plain wording of the "penalties" provision, § 1375(b), and the Indictment's clear reference thereto. See Lawrence v. City of Phila., Pa., 527 F.3d 299, 316-17 (3d Cir. 2008) (absent ambiguity, the plain meaning of the text is conclusive and the interpretive inquiry comes to an end).

In considering Defendant's request for dismissal based on a failure to allege a crime and failure to charge the proper elements, it is clear that the Indictment, by its terms and statutory citations, puts Defendant on notice that the Government alleges a knowing unlawful take and conspiracy to accomplish the same—both of which are subject to criminal punishment. That is, the Indictment's operative facts, read in conjunction with the two subsections of the MMPA, constitute sufficient factual orientation to survive a motion to dismiss. In particular, as to the conspiracy alleged in Count One, the Court rejects Defendant's contention,  Reply, at 10,  that the activity of Defendant and others shooting at pilot whales with a firearm is "is simply not prohibited under the act or the regulations." The Government, through the Indictment, clearly takes a different view of firing at whales with a firearm, and a plain reading of §§ 1372(a)(1) and 1375(b) supports this conclusion that no additional factual allegation needs to be offered by the Government. See United States v. Williams, 591 Fed.Appx. 78, 87-88 (3d Cir. 2014) (a "conspiracy count only need put defendants on notice that they are being charged with a conspiracy to commit the underlying substantive offense").

Moreover, as discussed herein and since the Indictment sufficiently alleges acts of knowingly shooting at pilot whales and conspiring to do so, the Court concludes that there is no element of the offenses—via the MMPA, 16 USC §§ 1372(a)(1), 1375(b), as well as 18 USC §§ 2, 371—that the Government has failed to plead. See Taylor, 686 F.3d at 190-91. That is, the Court discerns no other MMPA provision that may properly be characterized as an element of the instant

charges insofar as "the statutory definition is such that the crime may not be properly described without reference to the exception." Id.; see also 2A Sutherland Statutory Construction § 47:11 (7th ed.) ("And all courts do agree that those who claim the benefit of an exception have the burden of proving that they come within the limited class for whose benefit the exception was established."); Black's Law Dictionary (10th ed. 2014), justification defense ("Traditionally, the following defenses were justifications: [. . .] self-defense, defense of others, defense of property"). Thus, the Government need not have used the Indictment to address whether the take was not accidental or otherwise properly incidental (though the Government notes that any alleged permissible incidental take was not reported, Opp., at 22, n. 18). Whether characterized as exceptions or affirmative defenses, such issues are not elements and may be raised in due course and upon factual development. It may well be, as Defendant suggests, Brief, at 35, that "§ 1387 does apply in this case" but, at this stage, such a determination is unwarranted. The Court, therefore, finds the Indictment to be sufficient and denies the motion to dismiss insofar as it seeks dismissal on account of a defect in the Indictment.

ACCORDINGLY, IT IS on this 22nd day of April, 2016,

ORDERED that Defendant's omnibus motion to dismiss (ECF No. 11) is denied in part; and

FURTHER ORDERED that the Clerk shall terminate ECF No. 11.

s/Cathy L. Waldor
**CATHY L. WALDOR**
**United States Magistrate Judge**