# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| |  |
|---|---|
| UNITED STATES OF AMERICA,<br>v.<br>DANIEL ARCHIBALD,<br>                      Defendant. | Action No. 2:15-cr-0134<br><br>**OPINION & ORDER** |

**THIS MATTER** comes before the Court on Defendant and the Government's *in limine* motions. Both raise questions of statutory interpretation that the Court previously touched on in denying Defendant's omnibus motion to dismiss (Omnibus Opinion, ECF No. 34.), but now is called upon to further clarify in light of pending trial. The Court heard oral argument on these issues and, for the reasons set forth below, the Court: **grants** the Government's motion prohibiting the introduction of testimony or evidence on matters of law; **grants** Defendant's motion to introduce the MMPA authorization into evidence; and **denies** Defendant's motion concerning the use of grand jury testimony at trial for purposes other than impeachment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant, a crewman aboard a tuna fishing vessel, is accused via a two-count indictment of (1) conspiracy, 18 United States Code § 371, (2) "to take marine mammals on the high seas . . . by means of a firearm, contrary to" Title 16, United States Code §§ 1372(a)(1) and 1375(b), and 18 U.S.C. § 2. (Indictment, ECF No. 1, ¶ 2.) The charges under Title 16 are the relevant ones for the current dispute. This Title contains the Marine Mammal Protection Act (henceforth "MMPA"). As explained when ruling on the omnibus motion to dismiss, the requisite *mens rea* for the crimes charged under the MMPA is "knowing"—the Government seeks criminal penalties for a "knowing unlawful take[]." (Omnibus Opinion, at 6.)

Central to the motions *in limine* is a looming question of the intersection between the MMPA provisions charged and § 1387—"Taking of marine mammals incidental to commercial fishing operations." Despite the Court's ruling on this issue, Defendant continues to point to a mention of the word "intentional" in § 1387 to promulgate a different *mens rea* standard for commercial fishermen. This argument is at the heart of the motions presently before the Court. The Court takes this opportunity to more fully articulate the intersection of the MMPA provisions charged and § 1387 of the MMPA. This analysis requires: 1) a restatement of the MMPA charges in the Indictment; 2) an examination of *mens rea* under § 1387; and 3) a discussion of the applicability, if any, of § 1387 to the current evidentiary decisions.

## DISCUSSION

I.  MMPA Provisions Charged:

   16 U.S.C. § 1372(a)(1): Prohibitions

   (a) Taking: Except as provided in sections 1371, 1373, 1374, 1379, 1381, 1383, 1383a, and 1387 of this title and subchapter V, it is unlawful—
   > (1) for any person subject to the jurisdiction of the United States or any vessel or other conveyance subject to the jurisdiction of the United States to take any marine mammal on the high seas;

   16 U.S.C. § 1375(b): Penalties

   (b) Any person who knowingly violates any provision of this subchapter or of any permit or regulation issued thereunder (except as provided in section 1387 of this title) shall, upon conviction, be fined not more than $20,000 for each such violation, or imprisoned for not more than one year, or both.

Section 1372(a)(1) indicates that it is unlawful to take a marine mammal on the high seas and § 1375(b) provides that a knowing violation of a provision of the subchapter, that § 1372 falls within can carry a criminal penalty—imprisonment for not more than one year. Those are the bounds of the indictment.

II.  *Mens rea* under § 1387

Defendant now asks this Court to look beyond the four corners of the provisions charged to a cross-referenced provision § 1387, titled "Taking of marine mammals incidental to commercial fishing operations." The Court addressed § 1387 in its Omnibus Motion Opinion in so far as it impacted the requisite *mens rea* for the crime charged.[1] Specifically within § 1387, subsection (a)(5) mentions an "intentional lethal take," but this Court was clear to note that this did not change the required *mens rea* for a "taking" as charged under § 1372(a)(1). (Omnibus Opinion, at 7-8.)

Rather this subsection, § 1387(a)(5), describes a scenario where a commercial fishermen may kill a marine mammal and not otherwise be subject to the specific penalty provision of § 1387.[2] That scenario is one of self-defense as defined by § 1371(c). Under § 1387(a)(5), the only time when the "intentional lethal take of a marine mammal in the course of commercial fishing operations is" allowed is "as provided in section 1371(c)."[3] To read § 1387(a)(5)'s reference to "intentional lethal take(s)" as heightening the *mens rea* requirement for commercial fishermen would suggest that commercial fisherman are permitted to commit takes so long as they are not intentional. That would mean any mental state up to intentional would be permissible for commercial fishermen as defined by § 1387. This would necessarily include permission for

---

[1] The Omnibus Opinion noted that "[a]s to the apparently incongruous inclusion of a prohibition against an 'intentional lethal take' in § 1387(a)(5), the Court is skeptical that Congress would install such a sweeping change to the explicit *mens rea* requirement in the aptly titled 'penalties' provision, § 1375(b), without further revision or explanation. . . . [And] it would be absurd to create, as Defendant suggests, a heightened *mens rea* or 'a separate crime with a separate element of intent' through such implicit, indirect means . . . ." (citing In re Kaiser Aluminum Corp., 456 F.3d 328, 330 (3d Cir. 2006) ("A basic principle of statutory construction is that we should avoid a statutory interpretation that leads to absurd results.")); (Omnibus Opinion, at 7.)  "Thus, aside from the criminalization of knowing takes, the Court reads the MMPA to permit certain deterrence measures absent serious injury, § 1371(a)(4)(A)(i); to permit incidental takes in accordance with a slew of conditions and regulations, § 1371(a)(2); and, critically, to permit intentional lethal takes, § 1387(a)(5), *only where* 'imminently necessary in self-defense' or defense of others and upon proper reporting, § 1371(c)."  (Omnibus Opinion, at 7.)
[2] See Section 1387's separate penalty provision, subsection (h).
[3] "Except as provided in section 1371(c) of this title, the intentional lethal take of any marine mammal in the course of commercial fishing operations is prohibited." See § 1387(a)(5)

commercial fishermen to knowingly take marine mammals. This conclusion is illogical based on (a) the structure of the penalty provisions in the statute and (b) the MMPA's intended purpose.

### a. *Defendant's interpretation of § 1387(a)(5) would make the penalty section of § 1387 inoperable and leave knowing takes by commercial fishermen unregulated*

Section 1375 is the penalties section of the MMPA and it imposes both a civil and criminal penalty for "[a]ny person who knowingly violates any provision of this subchapter or any permit or regulation issued thereunder (except as provided in 1387 of this title)." See 16 U.S.C. § 1375(b). This is consistent with § 1387 that has its own penalty section (h). Section 1387(h) states:

> Except as provided in subsection (c), any person who violates this section shall be subject to the provisions of sections 1375 and 1377 of this title, and may be subject to section 1376 of this title as the Secretary shall establish by regulations.

Penalty section (h) of § 1387 is most clearly read as a modification to § 1375. It both precludes subsection (c) from penalty under § 1375 and it adds additional applicable provisions, such as § 1377, "Enforcement," and § 1376, "Seizure and forfeiture of cargo" for violations under § 1387 that do not fall within subsection (c).

Subsection (c) is appropriately excluded from penalty under § 1375 because it is the subsection of § 1387 that regulates the circumstances in which an incidental take by a commercial fishermen is deemed appropriate. As such, subsection (c) of section 1387 is the only subsection of § 1387 that has its own penalty provisions. Within subsection (c) there are four different penalty provisions addressing both additional fines for violations of that subsection's regulations and exemptions for compliance.[4] For example § 1387(c)(3)(D) states:

> If the owner of a vessel has obtained and maintains a current and valid authorization from the Secretary under this section and meets the requirements set forth in this section, including compliance with any regulations to implement a take reduction plan under this section, the owner of such vessel, and the master and crew members of the vessel, **shall not be subject to the penalties set forth in this subchapter**

---

[4] See § 1387(c)(3)(C)(iii); § 1387(c)(3)(D); § 1387(c)(3)(E); § 1387(c)(4)(C).

>    **for the incidental taking of marine mammals** while such vessel is engaged in a fishery to which the authorization applies.

16 U.S.C. § 1387(c)(3)(D) (emphasis added).

Conversely under subsection (h) commercial fishermen who commit a take outside the bounds § 1387(c) could be subject to additional penalty provisions including § 1375. This is consistent with holding commercial fishermen who commit a take more accountable than an average person who commits a take. Any person who commits a take under the MMPA can be subject to § 1375 civil penalties, it follows that a commercial fishermen may be subject to provisions in addition to §1375, for a take outside the bounds of § 1387(c). Both the commercial fishermen and the average person who commit a *knowing* take are subject to potential criminal penalties under § 1375(b).

To read the statute as Defendant suggests, leads to an incomprehensible result with respect to the penalty provisions. For example—the commercial fishermen violation in Defendant's view would be articulated in § 1387(a)(5) as an intentional lethal take. This take would be associated with the specific penalty provision of § 1387 subsection (h). Subsection (h) would direct the offender to the general MMPA penalty section, § 1375 which makes it a violation to "knowingly violate any provision of" subchapter II of the MMPA—subchapter II includes § 1387. Defendant's understanding of the statute at best makes the two separate penalty provisions redundant—because an intentional take is necessarily knowing—at worst puts the two provisions in direct contradiction with one another.

This reading would also leave open the question of what the penalty was for a knowing take by a commercial fishermen. Again it is an illogical result to think that a commercial fishermen

would be subject to penalties on both ends of the spectrum—for incidental[5] and intentional takes—but be left unregulated for an action in the middle—a knowing take.[6] Not to mention the fact that not regulating knowing takes by commercial fishermen runs counter to the purpose of the MMPA.

### b. *The main purpose of the statute is to protect marine mammals*

The Supreme Court has been clear that when "expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." United States v. Boisdore's Heirs, 49 U.S. 113, 122 (1850). It is a well-established doctrine that "courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy." Sec. & Exch. Comm'n v. C. M. Joiner Leasing Corp., 320 U.S. 344, 350–51 (1943).

The MMPA as articulated in its introduction, section 1361, was enacted to address the issue of marine mammals who may be "in danger of extinction or depletion as a result of man's activities." The statute at its core was seeking to ban the taking of marine mammals and when it could not impose a sweeping ban, regulate the practice. Subchapter II of the MMPA where the sections in debate, §§ 1372(a)(1), 1375(b), and 1387 are encompassed, is titled "Conservation and Protection of Marine Mammals." The first section of the subchapter, states:

> [t]here shall be a moratorium on taking and importation of marine mammals . . . commencing on the effective date of this chapter, during which time no permit may be issued for the taking of any marine mammal . . . except in the following cases:

---

[5] MMPA regulation, 50 CFR 229.2, defines incidental as "an act, a non-intentional or accidental act that results from . . . an otherwise lawful action." See also Pac. Ranger, LLC v. Pritzker, 211 F. Supp. 3d 196, 204 (D.D.C. 2016).
[6] "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme-because . . . only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371 (1988).

See 16 U.S.C. § 1371. Incidental takes by commercial fishermen is one of the cases where permits may be issued or fishermen may be granted authorizations under section 1387. See 16 U.S.C. § 1371(a)(2). But even within § 1387 there is a subsection (b) entitled "Zero Mortality Rate," mandating that:

> Commercial fisheries shall reduce incidental mortality and serious injury of marine mammals to insignificant levels approaching a zero mortality and serious injury rate within 7 years after April 30, 1994.

The overarching goal of the MMPA is to protect marine mammals, as indicated in various sections of the statute including § 1387. To read § 1387 in such a way as Defendant suggests would be incongruent with that purpose. Defendant's proposal of a heightened *mens rea* for commercial fishermen runs contrary to the provisions of subsection (b) explaining how commercial fishermen shall be acting in a way to reduce marine mammal mortality to zero.

Not to mention that it would place a higher burden on the average person than a commercial fishermen. The first section of subchapter II places a moratorium on taking of marine mammals. The penalty provision within subchapter II, provides civil penalties for taking of a marine mammal and potential criminal penalties for a knowing taking of a marine mammal. Unlike the average person, commercial fishermen are allowed to incidentally take under certain circumstances. But as outlined in the penalty section of 1387, if commercial fishermen's actions cross over to a knowing take they are subject to the criminal penalties of § 1375, as well as other statutory provisions. If defendant's *mens rea* were applicable, a commercial fishermen would be allowed to commit knowing takes without reprieve whereas an average person would potentially face criminal consequences. It makes little sense to place a higher burden on unskilled actors in comparison to commercial fishermen and the statute explicitly places a higher burden on commercial fishermen under the zero mortality rule.

### III. Applicability of § 1387 to Evidentiary Decisions

The question becomes what role should § 1387 have in a case where a commercial fishermen has been charged with a knowing take under §§ 1372(a)(1) and 1375(b). As indicated, § 1387 is a separate portion of the MMPA that regulates incidental takes by commercial fishermen. There are separate penalties articulated within that section of the statute. Ultimately, a commercial fisherman who incidentally takes a marine mammal without meeting the regulations articulated may be found to have actually knowingly taken that mammal and be subject to § 1375(b). The absence of following set out procedures and regulations could inform a finder of fact's decision that the act was not actually an accident but something more thoughtful. Conversely, it may be relevant for a finder of fact to be aware of scenarios less than what the defendant has been charged with that are permissible to inform the finder of fact's assessment of the reasonableness of the Defendant's actions.

Section 1387 is an entirely separate section of the MMPA that the Government could have charged the Defendant under, but chose not to. The Government could have charged the Defendant with both a knowing and incidental taking under §§ 1372(a)(1), 1375(b), and 1387. In that case, the Government would present evidence that Defendant not only knowingly took the pilot whale, but also that he knowingly violated § 1387 and is subject to the separate penalties of that section, which in part may include § 1375(b). The practicality or legality of charging under both provisions is not a question for this Court. That scenario is not this case.

In this case, the only inquiry is whether Defendant knowingly took the pilot whale in question. Even if the evidence shows that the Defendant accidentally took the whale he can be acquitted, regardless of whether or not he acted in accordance with his obligations under § 1387.

An accidental taking, by definition, is an act with a lower *mens rea* than the crime Defendant has been charged with.

To include § 1387 in a jury charge would go beyond the bounds of the Indictment. Including a crime with a separate set of elements and penalties than that which the Defendant has been charged with appears to be in neither party's best interest, not to mention contrary to law. Reference to § 1387 in the abstract or directly to its specific provisions could be relevant for the reasons articulated at the start of this section. The Court can imagine circumstances where the Government finds reference to § 1387 useful in showing the act was not accidental or where Defendant finds reference useful to explain the presence of a gun on the boat. The admissibility of these lines of inquiry, like all pieces of evidence, shall be evaluated on a case-by-case basis under the Federal Rules of Evidence, with particularly vigilant application of Rules 401 and 403.

It is within that framework that the Court evaluates the two motions *in limine* currently before it.

### a. *Government's Motion in Limine regarding evidence on matters of law*

The Government seeks to exclude any testimony on issues of law as it applies to the MMPA. (Govt. *in Limine*, ECF No. 76, at 11.) Specifically, the Government is concerned that any evidence regarding the meaning of the MMPA "would constitute an impermissible delegation of the Court's duties and risk confounding the jury as to the applicable law." (Govt. *in Limine*, at 11.) They argue, "Defendant's understanding of law should be precluded because it is not relevant" where the *mens rea* is knowing. (Id.)

Defendant's sole basis for rebutting the Government's motion is that the "MMPA establishes a standard of *mens rea*, the intentional lethal take, for commercial fishermen who hold MMPA Incidental Take Authorizations." (Opp., ECF No. 78, at 13.) The Court directs Defendant

to its previous ruling in the Omnibus Motion Opinion (ECF No. 6), that directly deals with this issue of the requisite *mens rea* for the crime charged. As articulated in the Omnibus Opinion and further dwelled upon herein, the appropriate *mens rea* for the crime charged in the indictment is knowing. The Government is right, in that if Defendant wishes to debate the legality of the MMPA a jury is no audience for such argument. Defendant suggests he may want to cross-examine agents who are called to the stand on "affidavits that they swore to that mislead the Court as to the state of the law." (Opp., ECF No. 78, at 13.) The Court surely is not resting its interpretation of the MMPA on the affidavit of an agent and struggles to see what other relevance this line of inquiry would have for the jury, that would not otherwise confuse them as to the current state of the law.

> b. ***Defendant's Motion in Limine to introduce MMPA Authorization and grand jury testimony***

According to Defendant the "MMPA provides a criminal penalty, but the penalty provisions specifically exclude commercial fishermen who possess Incidental Take Authorizations" under 16 U.S.C. § 1387. (Defendant *in Limine*, ECF No. 74-2, at 4.) Defendant argues that he needs the MMPA Authorization and grand jury testimony to show that he meets § 1387. As was previously discussed at length, this interpretation of the penalty provisions is untenable when read in their entirety within the context of the statute as a whole.

The MMPA Incidental Take Authorization may be admissible for other purposes. The Government seeks to exclude this piece of evidence because its purpose is "to show that the defendant's actions amounted to an incidental take and, thus, were legal." (Opp., ECF No. 79, at 15.) As the Government points out, the MMPA Authorization would pertain to provisions of the MMPA that "reiterate Congress's intent that certain takes in the course of commercial fishing operations, namely incidental, or accidental, ones, would be permissible." (Opp., ECF No. 79, at 15.) The Court agrees with the Government's assessment of the MMPA provisions and restates

that any determinations regarding the legality of the Defendant's actions is for the trier of fact to decide.

Yet, the MMPA Authorization presented in the context of other testimony, could be instructive on why the Defendant had a gun on board the Capt. Bob or why he may be pointing that gun at the water. This piece of evidence could inform the jury's credibility determination of Mr. Archibald or other potential witnesses. By its very definition § 1387 describes an action that is different than the action for which the Defendant is charged. At the same time, in helping the jury understand what a knowing take is, discussion regarding what is not a knowing take is unavoidable. Even in the absence of § 1387, conversation regarding how to define a knowing take and other acts that may result in the death of a marine mammal, that do not amount to a knowing take, could potentially be relevant. The Court is not prepared to exclude any and all discussion on a provision of the MMPA that may give context to how commercial fishermen operate. Understanding that the Government reserved its right to object to the admission of the MMPA Authorization on other hearsay grounds, the Court denies its request to exclude the authorization based on relevance at this time.

Alternatively, grand jury testimony presents various evidentiary issues. As the Government pointed out in their briefing it is not clear these statement are admissions by party opponents under Federal Rule of Evidence 801(d)(2)(A) or that they fall within the 803 hearsay exceptions. (Opp., ECF No. 79, at 13-14.); see also United States v. Santos, 372 F.2d 177, 180-81 (2d Cir. 1967). Moreover Defendant's purpose for using the testimony is to show that the fishing vessel was within 200 miles of the coast of NJ—a statutory requirement to be within the bounds of a § 1387 incidental take. (Defendant *in Limine*, ECF No. 74-2, at 1-2.) Because Mr. Archibald is not on trial for his compliance with § 1387 there seems little relevance to including

this testimony even if it where admissible, setting aside any impeachment purposes that this testimony may be used for. While the existence of § 1387 may inform the jury's decision making process in so far as it gives context to other actions, there is a limit to which the nitty gritty of § 1387 needs to be explored consistent with Federal Rules of Evidence 401 and 403. Mr. Archibald is not on trial for his compliance or lack thereof with § 1387. The central inquiry remains whether he took the pilot whale in question and if he did, were his actions knowing.

## CONCLUSION

The Court refers the parties to the Indictment as charged when choosing what evidence to use at trial. This Court clearly stated in its Omnibus Opinion and further articulated herein the requisite *mens rea* for the crime as charged. Section 1387 regulates a separate circumstance where commercial fishermen incidentally, or unintentionally, take marine mammals. Limited evidence regarding the existence of a scheme where commercial fishermen are allowed to commit incidental takes may, in context, provide insight to the fact finder. But, this Court will be wary of anything that serves to confuse the jury about what crime the Defendant is charged with or what the current state of the law is regarding that crime. It serves both parties' best interest and the interest of justice to stay within the four corners of the charging document, ensuring Mr. Archibald is given a fair trial for the crime as charged.

## ORDER

**ACCORDINGLY, IT IS** on this 13th day of October, 2017,

**ORDERED** that Government's Motion *in Limine* pertaining to the introduction of matters of law (ECF No. 76) is granted; and

**ORDERED** that Defendant's Motion *in Limine* pertaining to the use of MMPA Authorization and grand jury testimony (ECF No. 74) is granted in part and denied in part; and

**FURTHER ORDERED** that the Clerk shall terminate ECF Nos. 74 and 76.

*s/Cathy L. Waldor*
**CATHY L. WALDOR**
**United States Magistrate Judge**